# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**OSCAR DANTZLER**                                             **CIVIL ACTION**

**VERSUS**

                                                              **NO. 24-590-BAJ-SDJ**

**WILLIAM WILL JORDEN, et al.**

## NOTICE

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within **14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

      **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

      Signed in Baton Rouge, Louisiana, on June 17, 2025.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **OSCAR DANTZLER** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 24-590-BAJ-SDJ** |
| **WILLIAM WILL JORDEN, et al.** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on two Motions to Dismiss, one filed by filed by Defendant Doug Welborn (R. Doc. 17) and the other filed by Defendants the Nineteenth Judicial District Court and Judge William Jorden (R. Doc. 26).[1]  Plaintiff Oscar Dantzler, who is proceeding *pro se* in this matter, has not responded to either Motion to Dismiss, and the deadline for filing an opposition has long passed.  *See* Local Civil Rule 7(f) (responses to motions are due within 21 days).  As such, the Court considers Defendants' Motions unopposed.  The Court has carefully considered the law and the arguments and submissions of the Parties.  For the following reasons, the Court recommends the Motions to Dismiss be **granted** and Plaintiff's claims against all Defendants be **dismissed**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

At the outset, the Court notes that Plaintiff's Complaint and subsequent Amended Complaints[2] are difficult to understand and extremely repetitive.  As such, it is difficult for the Court to fully discern the factual bases for Plaintiff's arguments.

---

[1] Defendants incorrectly titled their Motion "Motion for Extension of Time to File Responsive Pleadings."  R. Doc. 26. However, the contents of the Motion as well as the Memorandum in Support, which is properly titled, make clear that this is a Motion to Dismiss.  As such, the Court will refer to Defendants' Motion as the "Motion to Dismiss" herein.

[2] *See* R. Docs. 1, 3, 5, and 20.

On July 22, 2024, Plaintiff filed suit against the 19th JDC; Judge Jorden, individually and in his official capacity as a 19th Judicial District Judge; and Doug Welborn, individually and in his official capacity as the Clerk of Court for the 19th JDC, seeking a writ of mandamus and injunctive relief.[3]  Per Plaintiff, he filed suit:[4]

> for the sole purpose of Receiving relief from the alleged abuse by defendant(s) and by the defendant's counsels that cause mental anguish to the plaintiff by the conspiracy, the fraudulent, and the perjury petition and the fraudulent statements filed into the court to have plaintiff to be illegally disqualified from the 2023 Governor's Election Race involving defendant's conspiracy; and the illegal dismissing the defendant's from trial and the courtroom in which plaintiff believes that if he had not been illegally disqualified from the Governor's race plaintiff strongly believes that he would have won the Governor's Election race.

Plaintiff challenges his disqualification from the race for Governor of Louisiana and the removal of his name from the ballot.[5]  He alleges that Anthony Jackson, Jr., filed an objection to Plaintiff's gubernatorial candidacy and petitioned to have him disqualified on August 17, 2023, in state court.[6]  A hearing on Jackson's objection was held on August 22, 2023, in the 19th JDC, with Judge William Jorden presiding.[7]  Judge Jorden ruled against Plaintiff and subsequently denied Plaintiff's requests to appeal his decision to the Louisiana First Circuit Court of Appeal.[8]  Plaintiff subsequently requested and paid for a copy of the transcript of those proceedings; however, to date, Plaintiff has never received a copy of said transcript.[9]

Plaintiff filed his Complaint in this Court on July 22, 2024.[10]  He subsequently amended his Complaint three times—on July 23, 2024; on August 1, 2024; and on September 16, 2024.[11]

---

[3] R. Doc. 1.
[4] R. Doc. 1 at 2.
[5] *Id.*
[6] *Id.* at 3.
[7] *Id.* at 5-6.
[8] *Id.* at 11.
[9] *Id.* at 15.
[10] R. Doc. 1.
[11] R. Docs. 3, 5, 20.

On September 16, 2024, Defendant Doug Welborn filed his Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[12] Shortly thereafter, on September 27, 2024, Judge Jorden and the 19th JDC filed their Motion to Dismiss, also arguing for dismissal pursuant to Rules 12(b)(1) and 12(b)(6).[13] As stated above, Plaintiff did not file an opposition or other response to either Motion to Dismiss, and the deadline for doing so has passed. Defendants' Motions, therefore, are unopposed.

## II.    LAW AND ANALYSIS

### A.    Applicable Law

#### 1.    Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Without subject-matter jurisdiction, a federal court simply has no authority to decide the case." *Pidgeon v. Parker*, 46 F. Supp. 3d 692, 697 (S.D. Tex. 2014). "[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte, even on appeal." *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *Weekly v. Morrow*, 204 F.3d 613, 615 & n. 6 (5th Cir. 2000)).

A Rule 12(b)(1) motion seeks dismissal of a complaint for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to hear the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984). A motion to dismiss under

---

[12] R. Doc. 17.
[13] R. Doc. 26.

Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

##### 2.     Rule 12(b)(6) Standard

Pursuant to Rule 12(b)(6), a defendant can seek dismissal of a complaint, or any part thereof, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Shiell v. Jones*, No. 19-848, 2020 WL 2331637, at *10 (E.D. La. May 11, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Shiell*, 2020 WL 2331637, at *10 (quoting *Iqbal*, 556 U.S. at 679).

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "Dismissal is appropriate when the complaint on its face shows a bar to relief." *Shiell*, 2020 WL 2331637, at *10 (quoting *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw

on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

### 3.    Standard for Pro Se Litigants

Plaintiff is proceeding in this litigation *pro se*. *Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also S.E.C. v. AMX, Int'l, Inc*., 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). A court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with relevant rules of procedural and substantive law." *NCO Fin. Sys., Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)) (internal quotations omitted). As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson,* 999 F.2d at 100 (citation omitted).

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd*., No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* And "[a] *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *NCO Fin. Sys.*, 2008 WL 2277843, at *3 (citing *Birl*, 660 F.2d at 593). Finally, "[w]hile much liberality is allowed in construing *pro se* complaints, a *pro se* litigant cannot simply dump a stack of exhibits

on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." *Richardson v. United Wholesale Mortgage, LLC*, No. 24-276, 2024 WL 5264095, at *5 n. 24 (M.D. La. Dec. 31, 2024) (quoting *Samtani v. City of Laredo*, 274 F. Supp. 3d 695, 698 (S.D. Tex. 2017)).

### B.    Discussion

In their Motions to Dismiss, Defendants argue for dismissal of Plaintiff's claims pursuant to both Rules 12(b)(1) and 12(b)(6). As explained below, none of Plaintiff's claims against any Defendant are viable, as the Court either lacks subject matter jurisdiction over them, or they fail to state a claim for which relief can be granted. Accordingly, the Court recommends that all of Plaintiff's claims be dismissed.[14]

### 1.    Whether the *Rooker-Feldman* Doctrine Applies

In their Motion to Dismiss, the 19th JDC and Judge Jorden first argue that this Court lacks subject matter jurisdiction over this case, or certain aspects thereof, based on the *Rooker-Feldman* Doctrine.[15] "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). Specifically, the *Rooker-Feldman* doctrine bars federal district courts from "modify[ing] or revers[ing] state court judgments." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir.

---

[14] After filing his initial Complaint, Plaintiff filed a First, Second, and Third Amended Complaint (R. Docs. 1, 3, 5, 20). Generally, an amended complaint supersedes the previous complaint. *Wooten v. Roach*, 431 F. Supp. 3d 875, 887 (E.D. Tex. 2019). Here, however, it is unclear whether Plaintiff intended for his subsequent Complaints to replace the preceding Complaint(s) or instead incorporate and amend them. Because Plaintiff is proceeding *pro se*, out of an abundance of caution, and for the purposes of these Motions only, the Court has considered all allegations and arguments in all of Plaintiff's Complaints in reaching its decision herein.

[15] In his Motion to Dismiss, Welborn also argues that this Court does not have subject matter jurisdiction to issue a writ of mandamus under the statutes cited by Plaintiff. However, as the Court is recommending that all of Plaintiff's claims against all Defendants be dismissed on other grounds, it does not further address this argument herein.

2013). This is called the *Rooker-Feldman* doctrine after the cases that first recognized it: *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The *Rooker-Feldman* doctrine is narrow and "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In determining whether *Rooker-Feldman* applies, a court must carefully evaluate what it is asked to review and reject. *Truong*, 717 F.3d at 382 (citing *Exxon Mobil*, 544 U.S. at 284). The court lacks jurisdiction only when the plaintiff "seeks relief that directly attacks the validity of an existing state court judgment," *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011), or the plaintiff's federal claims "are so inextricably intertwined with a state judgment that the federal court is in essence being called upon to review the state court decision." *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 390-91 (5th Cir. 2012) (quoting *Feldman*, 460 U.S. at 483 n. 16)) (internal quotations omitted).

Here, it is clear that Plaintiff takes umbrage with the ruling of the 19th JDC disqualifying him as a gubernatorial candidate. For example, Plaintiff repeatedly asserts that he was "illegally disqualified from the governor's race."[16] What is unclear to the Court, however, is whether Plaintiff is seeking to review, modify, or nullify that ruling. In his Complaint, Plaintiff seeks certain unspecified injunctive relief, but he never explains what injunctive relief he is seeking. As such, the Court cannot tell whether he seeks to have any of the state court rulings changed in any way via this lawsuit. Moreover, the Court cannot envision what injunctive relief would be available to Plaintiff, as the gubernatorial election at issue here concluded well over a year ago.

---

[16] *See, e.g.*, R. Doc. 1 at 2; R. Doc. 5 at 4.

In their Motion to Dismiss, the 19th JDC and Judge Jorden argue that "Plaintiff contests the validity of [the state court] proceeding and challenges the judgment disqualifying him from running in the 2023 gubernatorial election."[17]  The Court agrees that Plaintiff contests the validity of the proceedings.  However, should Plaintiff's Complaint seek to modify those judgments or preclude their enforcement in any way, such claims are barred by the *Rooker-Feldman* doctrine and should be dismissed.  Any such relief would be "inextricably intertwined" with the various underlying state court judgments because it would call on this Court to review the final state court decisions and conclude that they are void or otherwise inapplicable.  The *Rooker-Feldman* doctrine precludes an exercise of subject matter jurisdiction to the extent Plaintiff seeks any prospective relief regarding the application of final judgments in state court lawsuits.  S*ee Lance v. Dennis*, 546 U.S. 459, 463 (2006) ("Accordingly, under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.").

## 2.    Plaintiff's Claims Against Judge Jorden

The Court now turns to Plaintiff's claims against each Defendant, beginning with Judge Jorden, who Plaintiff sued in both his individual and official capacities.  As explained below, the Court finds that Judge Jorden is entitled to both absolute judicial immunity as well as immunity pursuant to the Eleventh Amendment.  Additionally, Plaintiff's claims for injunctive relief against Judge Jorden are without merit.

### a.    Judge Jorden is Entitled to Eleventh Amendment Immunity

The Eleventh Amendment bars a state from being sued in federal court by its own citizens, citizens of other states, or foreign nations.  U.S. Const. Amend. XI; *Seminole Tribe of Fla. v. Fla.*,

---

[17] R. Doc. 26-1 at 4.

517 U.S. 44, 54 (1996); *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 307 (5th Cir. 2001). "When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity." *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 281-82 (5th Cir. 2002). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Parker v. La. Dep't of Pub. Safety & Corr.*, No. 18-1030, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) (quoting *Med. RX/Sys., P.L.L.C. v. Tex. Dep't of State Health Servs.*, 633 F. App'x. 607, 610 (5th Cir. 2016)). *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted). The State of Louisiana has not waived its immunity from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing La. R.S. § 13:5106(A)).

Under the *Ex Parte Young* doctrine, however, "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735-36 (5th Cir. 2020) (citing *Ex Parte Young*, 209 U.S. 123, 167-68 (1908); *Air Evac EMS v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017)). This exception "rests on a legal fiction, the premise that a state official is not the State for sovereign-immunity purposes when a federal court commands [him or her] to do nothing more than refrain from violating federal law." *Id.* at 736 (internal quotations and citations omitted). For a suit to proceed under this doctrine, it must be a suit seeking declaratory or injunctive relief and: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation

of federal, not state, law." *Id.* (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015)). This is true, even where an injunction may have "an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

Plaintiff's claims against Judge Jorden in his official capacity are barred by the Eleventh Amendment. "The Eleventh Amendment to the United States Constitution prohibits the bringing of a lawsuit in federal court against a state, its agencies, or persons acting as official representatives thereof." *McGrew v. Roundtree*, No. 09-859, 2010 WL 3396899, at *2 (M.D. La. Jun. 3, 2010), *report and recommendation adopted*, 2010 WL 3396901 (M.D. La. Aug. 24, 2010). The United States Supreme Court has made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and, therefore, is barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also McGrew*, 2010 WL 3396899, at *2. Because Plaintiff's claims for monetary damages against Judge Jorden are barred by the Eleventh Amendment, it is recommended that those claims be dismissed. Moreover, Plaintiff cannot rely on the *Ex Parte Young* doctrine for his claims for injunctive relief against Judge Jorden in his official capacity because Plaintiff has failed to identify or allege ongoing conduct by Judge Jorden in violation of a federal law.

**b.    Judge Jorden is Entitled to Absolute Judicial Immunity**

"With regard to suits against judges in their individual capacity, 'judges enjoy absolute judicial immunity from lawsuits that cannot be overcome by allegations of bad faith or malice.'" *Jospeh v. Jones*, No. 24-208, 2024 WL 3977207, at *2 (M.D. La. Jul. 10, 2024), *report and recommendation adopted*, 2024 WL 3970697 (M.D. La. Aug. 28, 2024) (quoting *Severin v. Par. of Jefferson*, 357 F. App'x 601, 604 (5th Cir. 2009)). Stated another way, "[j]udges enjoy absolute immunity for judicial acts performed in judicial proceedings." *Phan v. Hanen*, No. 23-20598,

2024 WL 3593902, at *1 (5th Cir. Jul. 31, 2024) (citing *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996)).  "A judge is judicially immune as long as [he] was not performing a 'non-judicial action' or acting outside of [his] 'jurisdiction.'" *Jospeh*, 2024 WL 3977207, at *2 (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)).

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Phan*, 2024 WL 3593902, at *1 (quoting *Mays*, 97 F.3d at 111).  "Judicial immunity also applies to acts alleged to have been done corruptly." *Id.* (citing *Mireles*, 502 U.S. at 11).  "Judicial immunity is also applicable in cases asserting civil rights violations." *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967)).

Because the allegations against Judge Jorden are based on rulings he made during the legal proceedings concerning Plaintiff's potential gubernatorial candidacy, they concern only judicial acts performed in judicial proceedings, and Plaintiff has not argued otherwise.  His rulings were acts normally performed by a judge, and no party has suggested that Judge Jorden was acting outside his jurisdiction.  As such, Judge Jorden is immune from liability.  *See Joseph*, 2024 WL 3977207, at *2 (dismissing plaintiff's claims against judge, who signed a child support order, based on absolute judicial immunity); *McCoy v. McCormick*, No. 22-443, 2023 WL 3010215, at *15 (M.D. La. Feb. 15, 2023) (dismissing claims against state court judge based on absolute judicial immunity because judge was not acting outside the scope of his judicial duties or without jurisdiction).

**c.    Plaintiff's Claims for Injunctive Relief Against Judge Jorden Also Fail**

Plaintiff also seeks injunctive relief from Judge Jorden pursuant to 42 U.S.C. § 1983.[18] Historically, judicial officers did not enjoy absolute immunity from claims for injunctive relief; relief was available under 28 U.S.C. § 1983 against state court judges in their judicial capacity. *Williams v. Van Davis*, No. 18-1003, 2018 WL 1477146, at *2 (E.D. La. Mar. 8, 2018) (citing *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)). "However, the Federal Courts Improvement Act of 1996 . . . amended Section 1983 to provide that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable.'" *Id.* (quoting 42 U.S.C. § 1983). "The FCIA therefore statutorily overrule *Pulliam*'s holding regarding the availability of injunctive relief against a judge in his official capacity." *Id.* (citations omitted). Here, a declaratory decree was not violated, nor is declaratory relief unavailable. As such, injunctive relief pursuant to Section 1983 also is not available against Judge Jorden.

Finally, even if injunctive relief were not precluded, this court has no power to direct state officials in the performance of their duties. *Darville v. Verdigets*, No. 22-208, 2023 WL 2418364, at *3 (M.D. La. Jan. 17, 2023). The Court, therefore, cannot direct Judge Jorden to do, or not do, anything related to Plaintiff's state court case regarding his gubernatorial candidacy. As such, there is no avenue available to Plaintiff pursuant to which he can recover against Judge Jorden. It, therefore, is recommended that all of Plaintiff's claims against Judge Jorden be dismissed.

**3.    Plaintiff's Claims Against the 19th JDC**

The Court next turns to Plaintiff's claims against the 19th JDC. Because the 19th JDC is not an entity capable of being sued, Plaintiff's claims against it should be dismissed.

---

[18] *See, e.g.*, R. Doc. 1 at 1; R. Doc. 5 at 4-5.

According to Rule 17 of the Federal Rules of Civil Procedure, Louisiana law determines whether a party maintains capacity to be sued.  Fed. R. Civ. P. 17(b)(3) ("Capacity to sue or be sued is determined . . . by the law of the state where the court is located[.]").  "And, under Louisiana law, judicial districts lack capacity to be sued."  *McLin v. Twenty-First Judicial Dist.*, 614 F.Supp.3d 278, 286 (M.D. La. 2022) (finding that the 21st JDC lacks capacity to be sued and dismissing all claims against it).  *See also Laugand v. Bank of New York Mellon*, No. 17-83, 2017 WL 4276474, at *2 (M.D. La. Sep. 26, 2017) ("under Louisiana law, state judicial district courts are not persons capable of being sued").  Similarly, "a state court cannot be sued in a § 1983 action because it is not a 'person' subject to suit."  *Ford v. 19th Judicial Dist. Court East Baton Rouge Parish of La.*, No. 21-524, 2023 WL 2609824, at *2 (M.D. La. Feb. 27, 2023) (citing *Wilkerson v. 17th Judicial Dist. Court, Parish of LaFourche*, No. 08-1196, 2009 WL 249737, at *3-4 (E.D. La. Jan. 30, 2009)).  It, therefore, is recommended that all of Plaintiff's claims against the 19th JDC be dismissed for failure to state a claim upon which relief can be granted.[19]

### 4.    Plaintiff's Claims Against Doug Welborn

Like Judge Jorden, Doug Welborn, Clerk of Court for East Baton Rouge Parish, also is being sued both individually and in his official capacity.  Plaintiff's allegations against Welborn, generally, are as follows:[20]

> Plaintiff alleges that clerk of court, the clerk of court office and their employees has committed fraud by silence, criminal conduct, accessories to the fact, conspiracy and they have violated criminal laws by not turning plaintiff's transcript request after plaintiff have filled out the proper transcript form and after the plaintiff had paid the judicial administrator, court for transcript to be turned over to the plaintiff.

---

[19] In its Motion to Dismiss, the 19th JDC additionally argues that it, too, is entitled to Eleventh Amendment immunity. However, in light of its finding that the 19th JDC is not an entity capable of being sued, the Court declines to determine this issue.  *See McLin*, 614 F.Supp.3d at 287 ("Having determined that the 21st JDC lacks capacity to be sued, the Court dismisses Plaintiff's claims on this basis alone, and does not address the 21st JDC's alternative argument that Eleventh Amendment sovereign immunity bars Plaintiff's claim under La. R.S. § 23:961.").

[20] R. Doc. 5 at 12.

While Plaintiff repeats these allegations multiple times in both his original and Amended Complaints, they remain the same, *i.e.*, that Plaintiff properly requested and paid for a copy of the transcript from the proceeding held on August 22, 2023, in state court, which transcript was never received, and that Welborn refused to provide a copy to him or direct him to the proper place to obtain one because of his conspiracy with the other Defendants.[21]

### a.    Welborn Has Not Established that He is Entitled to Immunity

In his Motion to Dismiss, Welborn also argues that he, too, has immunity for Plaintiff's claims.  As the Fifth Circuit has explained, "[c]ourt clerks 'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion.'"  *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001) (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)).  However, a clerk "enjoys only qualified immunity for those routine duties not explicitly commanded by a court decree or by the judge's instructions."  *Id.* (citing *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980)).

As argued by Welborn, Plaintiff, in his Complaint "has alleged that Welborn and his deputies conspired with Judge Jorden and others so as not to provide him a transcript of the hearing held in state district court on August 22, 2023."[22]  Welborn continues that Plaintiff, therefore, "contends that Welborn and his deputies acted under some sort of instruction by Judge Jorden in this regard."[23]  Per Welborn, based on these allegations, Welborn is entitled to absolute immunity because he is alleged to have been acting pursuant to a judge's instruction.[24]  Welborn further

---

[21] *See* R. Doc. 1 at 8, 15, 33-35; R. Doc. 5 at 12-15.
[22] R. Doc. 17-1 at 6.
[23] *Id.*
[24] *Id.*

argues that it is "reasonable to infer that Plaintiff is complaining about actions which are an 'integral part of the judicial process' in which Welborn would be likewise immune."[25]

The Court cannot accept Welborn's reasoning here. As Plaintiff has made only conclusory allegations that Judge Jorden conspired with others against Plaintiff in his judicial rulings, the Court cannot use that baseless allegation as the basis for finding Welborn entitled to absolute immunity here. In addition, nothing in Plaintiff's allegations or otherwise indicates that Judge Jorden provided any instruction to Welborn about Plaintiff's transcript. As such, the Court, based on the information provided, cannot find that Welborn is entitled to absolute immunity from Plaintiff's claims. However, as explained below, because the Court finds that Plaintiff has failed to state a claim for which relief may be granted against Welborn, the Court still recommends that all of Plaintiff's claims against Welborn be dismissed.

### b.    Plaintiff Fails to State a Claim Against Welborn

Plaintiff's allegations fail to state a plausible claim against Welborn. First, Louisiana Code of Civil Procedure article 372 provides that "[w]hen a party to a proceeding requests a transcript and has paid for the transcript, the court reporter shall provide that party with an electronic copy of the transcript along with a paper copy of the transcript at no additional charge or cost to the requesting party." La. C.C.P. art. 372(F). Thus, state procedure tasks the court reporter, not the Clerk of Court, with the task of providing a requesting party with a copy of a court transcript. Second, La. R.S. 13:961 provides that court reporters are to be appointed by state court judges, with their pay coming from "the general fund of the parish or parishes comprising the judicial district for which the appointment is made." La. R.S. 13:961(E).

---

[25] *Id.*

In contravention of these provisions, Plaintiff alleges in his Complaint that Welborn had control over the particular transcript Plaintiff had requested and that Welborn is responsible for issuing court transcripts.  Plaintiff, however, provides no support for these conclusory assertions. In fact, the transcript request form provided by Plaintiff as an attachment to his Complaint nowhere references Welborn, the Clerk of Court, or the Clerk of Court's Office for the 19th JDC.[26]  As such, Plaintiff's repeated allegations directed against Welborn that, despite paying the required fee, Plaintiff did not receive a copy of a requested transcript, fail to state a claim against Welborn, as Plaintiff has in no way shown that Welborn is responsible for providing transcripts of court proceedings.  And state law plainly contradicts Plaintiff's assertions.

Here, Plaintiff provides only conclusory allegations, which the Court can neither accept as true or construe in favor of Plaintiff.  *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotations omitted); *see also BillJCo, LLC v. Apple Inc.*, 583 F.Supp.3d 769, 776 (W.D. Tex. 2022) ("While this Court construes a complaint in the light most favorable to plaintiff, accepting well-pleaded facts as true, it does not 'accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'") (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  As such, the Court finds that Plaintiff has failed to state a claim for which relief may be granted against Welborn and recommends that Plaintiff's claims against Welborn be dismissed.

---

[26] R. Doc. 1-7.

### C.    Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure governs amendments to pleadings. According to Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."   "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "It is well settled that before dismissing a complaint, a pro se plaintiff should be given an opportunity to amend his complaint to remedy any deficiencies."  *Hernandez v. W. Tex. Treasures Estate Sales, L.L.C.*, 79 F.4th 464, 468 (5th Cir. 2023) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).  "In other words, leave to amend should be liberally granted, when the plaintiff might be able to state a claim based on the underlying facts and circumstances." *Id.* (citing *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)).  "Nevertheless, a district court is not obligated to grant a futile motion to amend, for instance, when 'the plaintiff has already pleaded his best case.'" *Id.* (quoting *Brewster*, 587 F.3d at 768).

Here, any amendment would be futile.  Plaintiff has already amended his Complaint three times.   Moreover, as explained in detail above, Plaintiff is unable to bring a viable claim against any of the three Defendants based on the facts of this case.  As such, the Court does not recommend that Plaintiff be allowed to further amend his Complaint.

## III.    CONCLUSION

For the reasons set forth above,

**IT IS RECOMMENDED** that the Motion to Dismiss filed by Defendant Doug Welborn (R. Doc. 17) be **GRANTED** and that all claims of Plaintiff against Doug Welborn be **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss, improperly titled "Motion for Extension of Time to File Responsive Pleadings," filed by Defendants the Nineteenth

Judicial District Court and Judge William Jorden (R. Doc. 26) be **GRANTED** and that all claims of Plaintiff against these two Defendants be **dismissed with prejudice**.

    Signed in Baton Rouge, Louisiana, on June 17, 2025.


_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**